IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM NOSTHEIDE<br>1370 Arapaho Drive<br>Morrow, Ohio, 45152 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES** |
| CLARIGENT CORPORATION<br>d.b.a. "Clarigent Corporation"<br>5412 Courseview Drive, Ste 210<br>Mason, Ohio, 45040 | )<br>)<br>)<br>)<br>) | (Jury Demand Endorsed Herein) |
| **Serve also:**<br>Don Wright Jr., Registered Agent<br>5412 Courseview Drive, Ste 210<br>Mason, Ohio, 45040 | )<br>)<br>)<br>)<br>) | |
| -and- | )<br>) | |
| DONALD WRIGHT JR.,<br>10206 Morrow-Cozaddale Road<br>Morrow, Ohio, 45152 | )<br>)<br>)<br>) | |
| -and- | )<br>) | |
| WILLIAM HAYNES<br>219 Summer Field Lane<br>Lebanon, Ohio, 45036 | )<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff William Nostheide, by and through undersigned counsel, as his Complaint against

Defendants, states and avers the following:

**PARTIES.**

1.  Nostheide is an individual residing in Warren County, Ohio.

2. Clarigent Corporation ("Clarigent") is a Delaware limited liability corporation who maintains its principal place of business in Warren County, Ohio.

3. Wright Jr. is an individual residing in Warren County, Ohio.

4. Haynes is an individual residing in Warren County, Ohio.

## PERSONAL JURISDICTION.

5. Clarigent hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over Clarigent comports with due process.

6. Wright Jr. is an Ohio resident who contracts with companies in Ohio; who employs Ohio residents; and who owns or rents property in Ohio. As such, the exercise of personal jurisdiction over Wright Jr. comports with due process.

7. This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Nostheide asserts claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from the same set of facts and circumstances as Plaintiff's FLSA claims, specifically the employment relationship between Nostheide and Defendants', and are so related to Plaintiff's FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in this District because Defendants do a sizeable portion of their business in this District; their principal place of business is located in this district; and the wrongs herein alleged occurred in this District.

**FLSA COVERAGE.**

11. At all times referenced herein, Clarigent formed an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

12. At all times referenced herein, Wright Jr. exercised control over the enterprise and Nostheide's employment; made the decision not to pay Nostheide wages; and perpetrated the wage theft schemes alleged herein; and was thus Nostheide's "employer" within the meaning of 29 U.S.C. § 203(d) and R.C. § 4111.03(D)(2).

13. At all times referenced herein, Wright Jr. and Haynes were "person(s)" as that term is defined by 29 U.S.C. 203(a).

14. At all times relevant herein, Defendants were Nostheide's employer within the meaning of 29 U.S.C. § 203(d) and R.C. § 4111.03(D)(2).

**FACTUAL ALLEGATIONS.**

15. Clarigent is a mental health technology company that utilizes artificial intelligence to enhance mental health care through various products, software, and other technology it offers nationwide.

16. Wright Jr. is the President and CEO of Clarigent.

17. Haynes is the Vice President and CFO of Clarigent.

18. Nostheide is a former employee of Clarigent.

19. On or about February 17, 2019, Nostheide was hired by Clarigent as its Director of Quality Assurance.

20. At the time he was hired, Nostheide was offered a base salary of $105,000.00 plus 75,000 shares in Clarigent, as well as health insurance benefits and 401k contributions.

21. Clarigent's offer of employment, to include the details of his compensation and benefits, was detailed in an offer letter dated February 17, 2019 ("Employment Agreement").

22. A true and accurate copy of the Employment Agreement is attached hereto as Exhibit "A."

23. From 2019 through April of 2022, Nostheide's employment at Clarigent continued without incident, and he was paid as agreed.

24. In or around May of 2022, Wright Jr. approached Nostheide and told him that Clarigent was experiencing "temporary financial hardship."

25. Wright Jr. told Nostheide it was "time to show you are a leader here" and to loan Clarigent money.

26. Wright Jr. promised Nostheide that his "help" would be appreciated and that he would be rewarded with raises and bonuses.

27. Wright Jr. promised Nostheide that Clarigent would repay Nostheide any money he loaned Clarigent in one year or less.

28. On May 17, 2022, Nostheide loaned Clarigent $50,000.00.

29. The $50,000.00 loan was disbursed to Clarigent via check # 1021 from Nostheide's bank.

30. On May 26, 2022, Nostheide loaned Clarigent $60,000.00.

31. The $60,000.00 loan was disbursed to Clarigent via check #1025 from Nostheide's bank.

32. On July 1, 2022, Nostheide loaned Clarigent $40,000.00.

33. The $40,000.00 loan was disbursed to Clarigent via check #1003 from Nostheide's bank.

34. On August 10, 2022, Nostheide loaned Clarigent $25,000.00.

35. The $25,000.00 loan was disbursed to Clarigent via check #1006 from Nostheide's bank.

36. On September 9, 2022, Nostheide loaned Clarigent $500.00.

37. Nostheide provided the $500.00 directly to Wright Jr. in cash.

38. On September 14, 2022, Nostheide loaned Clarigent $8,000.00.

39. Nostheide provided the $8,000.00 directly to Wright Jr. in cash.

40. On March 29, 2023, Nostheide loaned Clarigent $50,000.00.

41. The $50,000.00 loan was disbursed to Clarigent via check #1019 from Nostheide's bank.

42. Between May of 2022 and March of 2023, Nostheide loaned Clarigent a total of $233,500.00.

43. On October 6, 2023, Clarigent paid Nostheide $3,500.00 of the money it owed him.

44. Upon information and belief, Wright Jr. embezzled most of the money Nostheide lent to Clarigent and used the money to furnish his lifestyle.

45. Between May of 2022 and July of 2022, Clarigent paid Nostheide no wages.

46. Between May of 2022 and July of 2022, Nostheide typically worked from 8:00am to 4:00pm Monday through Friday, as well as an additional 5-10 hours during the course of the week in the evenings and/or during weekends.

47. Between May of 2022 and July of 2022, Nostheide typically worked 45-50 hours per week.

48. Nostheide was not paid on a salary basis during the weeks he was not paid.

49. Nostheide was not paid at least the minimum wage during weeks he was not paid.

50. Nostheide was not paid overtime for the hours he worked over 40 in a week during weeks he was not paid.

51. Defendants' failure to pay Nostheide any wages at all for the hours he worked between May of 2022 and July of 2022 violated the FLSA and the Ohio Minimum Fair Wages Standards Act ("OMFWSA").

52. In or around January of 2023, Wright Jr. approached Nostheide and told him that Clarigent would be receiving investment money "soon."

53. Wright Jr. told Nostheide that Clarigent would make him "whole" by May of 2023 or before that time.

54. Wright Jr. told Nostheide that he "also" had to put a lot of his personal money into Clarigent and that he was "broke."

55. Wright Jr. complained to Nostheide that he was unable to pay certain personal bills.

56. Wright Jr. asked Nostheide to lend him some money so he could "stay afloat."

57. Wright Jr. promised to repay Nostheide "in a few months."

58. Between January of 2023 and June of 2023, Nostheide lent Wright Jr. money personally.

59. On January 10, 2023, Nostheide loaned Wright Jr. $3,000.00.

60. The $3,000.00 loan was disbursed to Wright Jr. via Venmo.

61. On January 13, 2023, Nostheide loaned Wright Jr. $1,000.00.

62. The $1,000.00 loan was disbursed to Wright Jr. via Venmo.

63. On February 27, 2023, Nostheide loaned Wright Jr. $500.00.

64. The $500.00 loan was disbursed to Wright Jr. via Venmo.

65. On February 28, 2023, Nostheide loaned Wright Jr. $1,000.00.

66. The $1,000.00 loan was disbursed to Wright Jr. via Venmo.

67. On March 24, 2023, Nostheide loaned Wright Jr. $2,500.00.

68. The $2,500.00 loan was disbursed to Wright Jr. via check #1032 from Nostheide's bank.

69. On April 20, 2023, Nostheide loaned Wright Jr. $300.00.

70. The $300.00 loan was disbursed to Wright Jr. via Venmo.

71. On June 12, 2023, Wright Jr. asked Nostheide to loan him money to pay his son's tuition, in the amount of $1,800.00.

72. Wright Jr. promised to pay back Nostheide "in a few months," when the repeatedly promised investor payments would be made to Clarient.

73. Nostheide paid Wright Jr.'s son's tuition by Credit Card.

74. During January of 2023, Clarient paid Nostheide $1,100.00 less per pay period than originally agreed, amounting to a reduction of his salary from $105,000.00 to approximately $83,500.00.

75. Clarient paid Nostheide less than his full salary as a cost cutting measure, and not for any reason related to Nostheide's work performance.

76. Between February 1, 2023 and December 31, 2023, Clarient paid Nostheide no wages at all, other than the following payments:

   a. $2,500.00 on May 18, 2023;

   b. $986.96 on May 19, 2023; and

   c. $4,375.00 on September 8, 2023;

77. Each payment made to Nostheide between February 1, 2023 and December 31, 2023 came after Nostheide complained to Wright Jr. about not getting paid.

78. On or about September 27, 2023, Wright Jr. paid Nostheide $2,000.00 of what he owed Nostheide by Venmo.

79. Between February and May of 2023, Nostheide typically worked from 8:00am to 4:00pm Monday through Friday, as well as an additional 5-10 hours during the course of the week in the evenings and/or during weekends.

80. Between February and May of 2023, Nostheide typically worked 45-50 hours per week.

81. Nostheide was not paid on a salary basis during the weeks he was not paid.

82. Nostheide was not paid at least the minimum wage during weeks he was not paid.

83. Nostheide was not paid overtime for the hours he worked over 40 in a week during weeks he was not paid.

84. Defendants' failure to pay Nostheide any wages for the hours he worked between February 1, 2023 and December 31, 2023 (other than during the weeks of May 15, 2023 and September

4, 2023) violated the FLSA and the Ohio Minimum Fair Wages Standards Act ("OMFWSA").

85. In or around late December, 2023, Nostheide complained to Wright Jr. and Haynes about his own mounting financial difficulties as a result of loaning nearly a quarter million dollars to Clarient and working a year without wages.

86. Nostheide complained to Wright Jr. and Haynes that he believed it was illegal to not pay an employee any wages and that "this has gone on long enough."

87. Wright Jr. apologized to Nostheide and attempted to convince him that "things are going to turn around next year (2024)" and that "you will get everything we owe back and then some."

88. No longer believing Wright Jr., Nostheide told Wright Jr. and Haynes that he would be seeking the advice of an attorney if Wright Jr. and Clarigent did not start paying him his wages and paying down what they owed him from the loans he made beginning in January, 2024.

89. On January 16, 2024, Wright Jr. and Haynes terminated Nostheide.

90. Nostheide was given no reason for his termination.

91. Upon information and belief, Wright Jr. participated in making the decision to terminate Nostheide.

92. Upon information and belief, Haynes participated in making the decision to terminate Nostheide.

93. Defendants terminated Nostheide because of his protected complaints about unpaid wages, in violation of the FLSA and the OMFWSA.

94. At the time of Nostheide's termination, Defendants provided him with a written termination notice, dated January 1, 2024 ("Termination Notice").

95. A true and accurate copy of the Termination Notice is attached hereto as Exhibit "B."

96. In the Termination Notice, Clarigent acknowledged that it owes "funds" to Nostheide.

97.  To date, Clarigent and Wright Jr. have failed to repay the money Nostheide loaned to them.

98.  Clarigent did not pay Nostheide any wages at all for the work he performed during January of 2024.

99.  On or about April 8, 2024, Clarigent demanded that Nostheide pay $10,000 to retain company shares that were already fully vested.

100.  Given how much money Nostheide has already given Clarigent, Nostheide refused to pay another $10,000.00.

101.  Thereafter, as a final act of retaliation, Clarigent stripped Nostheide of all shares he owned in the company.

102.  As a result of Defendants wrongful conduct, Nostheide has suffered and continues to suffer damages.

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT.
### (Asserted Against Clarigent and Wright Jr. Only).

103.  Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-102, above.

104.  The FLSA requires each covered employer, such as Clarigent, to pay all non-exempt employees a regular rate of at least the minimum wage for all hours worked.

105.  The FLSA requires each covered employer, such as Clarigent, to pay all non-exempt, hourly employees an overtime premium for all hours worked over forty (40) in a single workweek.

106.  Between May of 2022 and July of 2022, Clarigent and Wright Jr. did not pay Nostheide any wages at all.

107.  Other than during two weeks in 2023, Clarigent and Wright Jr. did not pay Nostheide any wages at all during 2023.

108.  Clarigent and Wright Jr. did not pay Nostheide any wages at all for the work he performed between January 1, 2024 and January 16, 2024.

109. Because Nostheide was not paid any wages during these time periods, he was not paid on a salary basis, and thus he was non-exempt for all weeks of his employment.

110. Further, because Defendants stole more than $230,000.00 from Nostheide in the form of loans during 2022 and 2023 – far more than the approximately $100,000.00 Nostheide was paid in wages during this time, Nostheide was effectively paid $0.00 during this time period.

111. The loans made to Clarigent and Wright Jr. were thus unlawful "kickbacks" under the FLSA. 29 CFR §531.25 provides:

> [w]hether in cash or in facilities, **"wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee.** This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.[1]

112. By virtue of the unlawful kickbacks Clarigent and Wright Jr. demanded of Nostheide, Nostheide has yet to be paid any wages at all by Defendants.

113. Nostheide will continue to have a claim for failure to pay wages – the minimum wage and where applicable, overtime – until all monies he loaned to Clarigent and Wright Jr. as part of their unlawful kickback scheme are repaid.

114. Clarigent and Wright Jr.'s conduct was part of a deliberate, willful scheme, and amounts to a willful violation of the FLSA.

115. Clarigent and Wright Jr. scammed Nostheide and lied to him about future raises and bonuses to keep him working for free.

116. Clarigent and Wright Jr. did not scam Nostheide by accident; their scheme was intentional, knowing, and deliberate.

---

[1] (**Emphasis** added).

117. In stealing both money and labor from Nostheide, Clarigent and Wright Jr. acted without a good faith belief that their conduct conformed with the legal requirements of the FLSA.

118. Nostheide is entitled to all legal and equitable remedies available for violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

## COUNT II: VIOLATION OF THE OHIO MINIMUM FAIR WAGES STANDARDS ACT.
### (Asserted Against Clarigent and Wright Jr. Only).

119. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1- 118, above.

120. In 2022, the OMFWSA required employers to pay a minimum wage of at least $9.30 per hour to all non-exempt employees.

121. In 2023, the OMFWSA required employers to pay a minimum wage of at least $10.10 per hour to all non-exempt employees.

122. Between May of 2022 and July of 2022, Clarigent and Wright Jr. did not pay Nostheide any wages at all.

123. Other than during two weeks in 2023, Clarigent and Wright Jr. did not pay Nostheide any wages at all during 2023.

124. Clarigent and Wright Jr. did not pay Nostheide any wages at all for the work he performed between January 1, 2024 and January 16, 2024.

125. Because Nostheide was not paid any wages during these time periods, he was not paid on a salary basis, and thus he was non-exempt for all weeks of his employment.

126. Further, because Clarigent and Wright Jr. stole more than $240,000.00 from Nostheide in the form of loans during 2022 and 2023 – far more than the approximately $100,000.00 Nostheide was paid in wages during this time, Nostheide was effectively paid $0.00 during this time period.

127. In denying Nostheide compensation at the requisite Ohio minimum wage rate and overtime pay, Clarigent and Wright Jr. violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

128. Ohio R.C. § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

129. By failing to pay Nostheide overtime when he worked more than forty (40) hours in a workweek, Clarigent and Wright Jr. also violated Ohio R.C. § 4111.03.

130. As a direct and proximate result of Clarigent and Wright Jr.'s unlawful conduct, Nostheide has suffered and will continue to suffer a loss of income and other damages.

131. Having violated the OMFWSA, Clarigent and Wright Jr. are liable to Nostheide for the full amount of his unpaid minimum wages, overtime wages, and for his costs and reasonable attorneys' fees.

## COUNT III: BREACH OF CONTRACT.
### (Asserted Against Clarigent Only).

132. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-131, above.

133. Upon hiring Nostheide, Clarigent entered into the Employment Agreement with Nostheide, wherein Clarigent agreed to pay Nostheide a base salary of $105,000.00 and to provide him with, *inter alia*, health insurance benefits and 401k matching contributions.

134. During his employment, Nostheide purchased 75,000 shares in Clarigent and was compensated an additional 130,000 shares, the value of which is presently unknown.

135. Nostheide has fully performed all obligations required under the contract, including working as the Director of Quality Assurance from 2019 through January of 2024, and was entitled to be

paid his salary for this work and to enjoy his benefits, and further, to possess his shares in the company, as provided for in the Employment Contract.

136. In or around May of 2022, Wright Jr., acting on behalf of Clarigent, informed Nostheide that the company was experiencing "temporary financial hardship" and requested that Nostheide loan money to the company.

137. Wright Jr. assured Nostheide that his loans would be repaid within a year and that his contributions would be rewarded with raises and bonuses.

138. Nostheide subsequently loaned Clarigent a total of $233,500.00 between May 2022 and March 2023.

139. Defendant Clarigent breached the contract by failing to pay Nostheide his agreed salary and by failing to maintain the benefits that were promised to him.

140. Nostheide incurred unreimbursed medical expenses because of Clarigent's breach.

141. Clarigent breached its promise to repay the loaned money, making only insubstantial partial payments made to reduce the amount owed by less than 2 percent.

142. Clarigent further breached its contractual obligations when it stole Nostheide's shares in the company, which it had no legal right to do.

143. As a result of Clarigent's breach, Nostheide has suffered damages exceeding $380,000.00.

## COUNT IV: BREACH OF CONTRACT.
### (Asserted Against Wright Jr. Only).

144. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-143, above.

145. Between January 2023 and June 2023, Wright personally requested and received personal loans from Nostheide totaling $8,300.00, promising repayment within a few months.

146. Wright breached the contract by failing to repay the personal loans within the promised time frame, with only a partial payment of $2,000.00 made on September 27, 2023.

147. As a result of Wright's breach, Nostheide has suffered damages in an amount of $6,300.00

13

## COUNT V: BREACH OF IMPLIED CONTRACT.
### (Asserted Against Clarigent Only).

148. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-147, above.

149. An implied contract existed between Nostheide and Clarigent, evidenced by their conduct, interactions, and mutual understanding that Nostheide would be compensated for his work and that any loans he made would be repaid.

150. Nostheide performed his work duties under the implied contract, including working as the Director of Quality Assurance from 2019 through January 16, 2024.

151. Clarigent breached the implied contract by failing to pay Nostheide for his work from February 1, 2023, to December 31, 2023.

152. Nostheide provided loans to Clarigent totaling $233,500.00 between May 2022 and March 2023.

153. Clarigent breached the implied contract by failing to repay the loaned money, with only a partial payment of $3,500.00 made on October 6, 2023.

154. Clarigent further breached its contractual obligations when it stole Nostheide's shares in the company, which it had no legal right to do.

155. As a result of Clarigent's breaches, Nostheide has suffered damages suffered damages exceeding $380,000.00.

## COUNT VI: BREACH OF IMPLIED CONTRACT.
### (Asserted Against Wright Jr. Only).

156. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-155, above.

157. An implied contract existed between Nostheide and Wright Jr., evidenced by their conduct, interactions, and mutual understanding that Nostheide would be repaid for the personal loans he made to Wright Jr.

158. Nostheide performed his obligations under the implied contract, including providing personal loans to Wright Jr. totaling $8,300.00

159. Wright Jr. breached the implied contract by failing to repay the loaned money, with only a partial payment of $2,000.00 made on September 27, 2023.

160. As a result of Wright Jr.'s breach, Nostheide has suffered damages in the amount of $6,300.00.

## COUNT VII: UNJUST ENRICHMENT.
### (Asserted Against Clarigent Only).

161. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-160 above.

162. Clarigent received a benefit from Nostheide's work and loans to it.

163. Clarigent retained these benefits under circumstances where it would be unjust to do so without full repayment.

164. Clarigent paid Nostheide's salary for nearly three years prior to May of 2022; made a partial payment of $3,500.00 towards the loans; and provided Nostheide with shares of the company, which further evidences the existence of these obligations.

165. It would be inequitable for Clarigent to enjoy the benefit of the value provided by Nostheide without repaying him as agreed and paying him the salary Clarigent promised him.

## COUNT VIII: UNJUST ENRICHMENT.
### (Asserted Against Wright Jr. Only).

166. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-165, above.

167. Wright received a benefit from the personal loans made by Nostheide totaling $8,300.00.

168. Wright retained this benefit under circumstances where it would be unjust to do so without full repayment.

169. Wright made a partial payment of $2,000.00, which further evidences the existence of the obligation.

170. It would be inequitable for Wright Jr. to enjoy the benefit of the value provided by Nostheide without repaying him as agreed.

## COUNT IX: PROMISSORY ESTOPPEL.
### (Asserted Against Clarigent Only).

171. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-170, above.

172. Clarigent made clear and unambiguous promises to Nostheide that he would be repaid the loans he made and compensated with his agreed salary, company shares, and bonuses.

173. Nostheide relied on these promises to his detriment by loaning money and continuing to work without pay.

174. Nostheide's reliance was reasonable and foreseeable.

175. Clarigent paid Nostheide's salary for nearly three years prior to May of 2022; made a partial payment of $3,500.00 towards the loans; and provided Nostheide with shares of the company, which further evidences the existence of these obligations.

176. Nostheide sustained damages as a direct and proximate result of Clarigent's broken promises and Nostheide's justifiable reliance thereon.

## COUNT X: PROMISSORY ESTOPPEL.
### (Asserted Against Wright Jr. Only).

177. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-176, above.

178. Wright Jr. made clear and unambiguous promises to Nostheide that he would be repaid the personal loans totaling $8,300.00.

179. Nostheide relied on these promises to his detriment by loaning money to Wright.

180. Nostheide's reliance was reasonable and foreseeable.

181. Wright Jr. made a partial payment of $2,000.00, which further evidences the existence of the promise to repay.

182. Nostheide sustained damages as a direct and proximate result of Wright Jr.'s broken promises and Nostheide's justifiable reliance thereon.

### COUNT XI: FRAUD.
### (Asserted Against Wright Jr. Only).

183. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-182, above.

184. In or around May 2022, Wright Jr., acting on behalf of Clarigent, approached Nostheide and told him that Clarigent was experiencing "temporary financial hardship."

185. Wright Jr. informed Nostheide that it was "time to show you are a leader here" and requested that Nostheide loan Clarigent money, assuring him that his "help" would be appreciated and rewarded with raises and bonuses.

186. Wright Jr. promised Nostheide that Clarigent would repay any money he loaned to the company within one year or less.

187. In reality, Wright Jr. and Clarigent had no intention of repaying Nostheide.

188. Wright Jr. and Clarigen knew that their representations to Nostheide were false.

189. Relying on these representations, Nostheide loaned Clarigent $233,500.00 between May of 2022 and March of 2023.

190. In or around January 2023, Wright Jr. further assured Nostheide that Clarigent would be receiving investment money "soon" and that Nostheide would be made "whole" by May of 2023 or before that time.

191. Despite these repeated assurances, Clarigent failed to repay the loans as promised, with only a partial payment of $3,500.00 made on October 6, 2023.

192. Upon information and belief, Wright Jr. embezzled most of the money Nostheide lent to Clarigent and used the money to furnish his lifestyle, further evidencing that Wright Jr. knew that Clarigent had no intention of repaying Nostheide.

193. As a result of these false representations and fraudulent conduct, Nostheide has suffered damages in an amount to be proven at trial, including the $230,000.00 that remains unpaid.

## COUNT XII: FRAUD.
### (Asserted Against Clarigent Only).

194. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-193, above.

195. In or around January 2023, Wright Jr. approached Nostheide and told him that he personally was unable to pay certain bills and that he was "broke," requesting personal loans to stay afloat.

196. Wright Jr. assured Nostheide that he had also put a lot of his personal money into Clarigent and that he would repay Nostheide "in a few months."

197. Between January 2023 and June 2023, Nostheide loaned Wright Jr. a total of $8,300.00 based on the repeated assurances from Wright Jr. that these loans would be repaid within a few months.

198. Despite these repeated assurances, Wright Jr. failed to repay the loans as promised, with only a partial payment of $2,000.00 made on September 27, 2023.

199. Upon information and belief, Wright Jr. embezzled and converted the $233,500.00 in loans Nostheide made to Clarigent.

200. Wright Jr. used his position as President and CEO of Clarigent to con Nostheide into giving him $233,500.00, under the false pretense that the money was for the benefit of the company.

201. Wright Jr.'s representations to Nostheide regarding his and Clarigent's need for loans, and intent to pay those loans back, were false, and Wright Jr. knew they were false.

202. As a result of these false representations and fraudulent conduct, Nostheide has suffered damages in an amount to be proven at trial, including the $6,300.00 that remains unpaid.

## COUNT XIII: VIOLATION OF THE OHIO PROMPT PAY ACT.
### (Asserted Against Clarigent Only).

203. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-202, above.

204. During all times material to this complaint, Clarigent was an entitie covered by the OPPA; and Nostheide was employed by Clarigent within the meaning of OPPA.

205. The OPPA required that Clarigent pay Nostheide all wages he was entitled to on or before the first day of each month, for wages earned by Nostheide during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of the month, for wages earned by Nostheide during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

206. During all times material to this complaint, Nostheide was not paid the wages he earned within 30 days of performing the work. *See* O.R.C.§ 4113.15(B).

207. In violating the OPPA, Clarigent acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law.

## COUNT XIV: CONVERSION.
### (Asserted Against Clarigent Only).

208. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-207, above.

209. By failing to repay Nostheide the monies he loaned it and stealing his shares in the company, Clarigent is wrongfully exerting dominion over Nostheide's property.

210. Despite due demand, Clarigent continues to wrongfully exert dominion over Nostheide's property.

211. Clarigent has wrongfully converted Nostheide's property for its own benefit without legal claim or right.

212. Clarigent's wrongful conversion of Nostheide's property has deprived Nostheide's of the rightful use of that property.

213. As a direct and proximate result of Defendant Clarigent's wrongful conversion of Nostheide's property, Nostheide has suffered, and continues to suffer, damages in excess of $230,000.00.

### COUNT XV: CONVERSION.
### (Asserted Against Wright Jr. Only).

214. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-213, above.

215. By failing to repay Nostheide the monies he advanced to him, Wright Jr. wrongfully exerting dominion over Nostheide's property.

216. Despite due demand, Wright Jr. continues to wrongfully exert dominion over Nostheide's property.

217. Wright Jr. has wrongfully converted Nostheide's property for his own benefit without legal claim or right.

218. Wright Jr.'s wrongful conversion of Nostheide's property has deprived Nostheide's of the rightful use of that property.

219. As a direct and proximate result of Wright Jr.'s wrongful conversion of Nostheide's property, Nostheide has suffered, and continues to suffer, damages in excess of $6,300.00.

### COUNT XVI: FRAUDULENT INDUCEMENT.
### (Asserted Against Wright Jr. Only).

220. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-219, above.

221. Wright Jr. entered into an implied contract with Nostheide for the express purpose of inducing Nostheide into providing Wright Jr. with over $8,300.00 in loans.

222. At the time the implied contract was entered into, Wright Jr. represented to Nostheide that he would honor the terms of their agreement and repay him within months.

223. At the time the implied contract was entered into, Wright Jr. never had any intention of honoring the terms of the agreement.

224. At the time the implied contract was entered into, Nostheide was unaware that Wright Jr. had no intention of honoring the terms of their agreement.

225. Nostheide justifiably relied upon Wright Jr.'s representations that he would honor the terms of their agreement.

226. Wright Jr. intentionally and fraudulently induced Nostheide to loan him money knowing full well that he had no intention of ever repaying Nostheide.

227. Wright Jr.' fraudulent inducement was willful, wanton, intentional, and malicious.

228. As a direct and proximate result of Wright Jr.' willful, wanton, intentional, and malicious fraudulent inducement, Nostheide has suffered, and continues to suffer, damages in excess of $6,300.00.

## COUNT XVII: FRAUDULENT INDUCEMENT.
### (Asserted Against Clarigent Only).

229. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-228, above.

230. Clarigent entered into an implied contract with Nostheide for the express purpose of inducing Nostheide into providing Clarigent with over $233,500.00 in loans.

231. At the time the implied contract was entered into, Wright Jr. represented to Nostheide that Clarigent would honor the terms of their agreement and repay her, plus interest and bonuses.

232. At the time Wright Jr. made these promises, he was acting within the scope of his authority as Clarigent's president and CEO.

233. At the time the implied contract was entered into, Clarigent never had any intention of honoring the terms of the agreement.

234. At the time the implied contract was entered into, Nostheide was unaware that Clarigent had no intention of honoring the terms of their agreement.

235. Nostheide justifiably relied upon Wright Jr.'s representations that Clarigent would honor the terms of the agreement.

236. Wright Jr. intentionally and fraudulently induced Nostheide to loan Clarigent money knowing full well that Clarigent had no intention of ever repaying Nostheide.

237. Clarigent's fraudulent inducement was willful, wanton, intentional, and malicious.

238. As a direct and proximate result of Clarigent's willful, wanton, intentional, and malicious fraudulent inducement, Nostheide has suffered, and continues to suffer, damages in excess of $230,000.00.

### COUNT XVIII: CIVIL LIABILITY FOR CRIMINAL CONDUCT PURSUANT TO OHIO R.C. § 2307.60. (Asserted Against Clarigent Only).

239. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-238, above.

240. Ohio R.C. § 2307.60 provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code."

241. Clarigent violated Ohio R.C. § 2913.02(A)(3), which prohibits theft by deception, when it made false and deceptive assertions to Nostheide that it would repay loans it knew it would not, as part of a scheme to steal nearly a quarter-million dollars from Nostheide.

242. Clarigent further Ohio R.C. § 2913.02(A)(1) when it deprived Nostheide of his fully vested shares in the company.

243. Clarigent's conduct of using deception to steal money from Nostheide constitutes a criminal act and a theft offense as defined in R.C. § 2913.01.

244. Clarigent's conduct of unlawfully depriving from Nostheide of his shares in the company constitutes a criminal act and a theft offense as defined in R.C. § 2913.01.

245. Clarigent's criminal theft offenses entitle Nostheide to recover treble damages pursuant to R.C. § 2307.60(A)(iii).

246. As a direct and proximate result of Clarigent's willful, wanton, intentional, and malicious criminal conduct, Nostheide has suffered, and continues to suffer, damages in excess of $690,000.00.

## COUNT XIV: CIVIL LIABILITY FOR CRIMINAL CONDUCT PURSUANT TO OHIO R.C. § 2307.60.
### (Asserted Against Wright Jr. Only).

247. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-246, above.

248. Ohio R.C. § 2307.60 provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code."

249. Ohio R.C. § 2307.60 provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code."

250. Wright Jr. violated Ohio R.C. § 2913.02(A)(3), which prohibits theft by deception, when he made false and deceptive assertions to Nostheide that he would repay loans he had no intention of repaying, as part of a scheme to steal money from Nostheide.

251. Wright Jr. conduct of using deception to steal money from Nostheide constitutes a criminal act and a theft offense as defined in R.C. § 2913.01.

252. Clarigent's criminal theft offense entitles Nostheide to recover treble damages pursuant to R.C. § 2307.60(A)(iii).

253. As a direct and proximate result of Clarigent's willful, wanton, intentional, and malicious criminal conduct, Nostheide has suffered, and continues to suffer, damages in excess of $18,900.00.

**COUNT XX: CONSTRUCTIVE FRAUD.**
**(Asserted Against Wright Jr. And Clarigent Only).**

254. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-253, above.

255. Wright Jr., as the President and CEO of Clarigent, owed a fiduciary duty to act in the best interests of the company and its stakeholders, including Nostheide.

256. Clarigent, through the actions of Wright Jr., also owed a fiduciary duty to Nostheide.

257. Wright Jr. and Clarigent breached this fiduciary duty by making false promises and representations regarding the financial health of Clarigent and the repayment of loans, without disclosing the true financial situation.

258. In May 2022, Wright Jr., acting on behalf of Clarigent, informed Nostheide that the company was experiencing temporary financial hardship and requested loans, promising repayment within one year and that his contributions would be rewarded with raises and bonuses.

259. Based on these representations, Nostheide loaned Clarigent a total of $233,500.00 between May 2022 and March 2023.

260. In January 2023, Wright Jr. further assured Nostheide that investment money was imminent and that he would be made whole by May 2023 or before.

261. Wright Jr. also personally requested and received loans from Nostheide, promising repayment within a few months, totaling $8,300.00.

262. Despite these assurances, both Clarigent and Wright Jr. failed to repay the loans as promised, with only partial payments of $3,500.00 from Clarigent and $2,000.00 from Wright Jr.

263. Wright Jr. and Clarigent used their position as Nostheide's employer to gain an unfair advantage by inducing Nostheide to provide loans and continue working without pay, even if there was no specific intent to deceive.

264. Nostheide relied on these representations to his detriment, resulting in financial harm due to the significant amounts of money loaned and unpaid.

265. As a result of Wright Jr. and Clarigent's conduct, Nostheide has suffered damages in an amount to be proven at trial.

## COUNT XXI: QUANTUM MERUIT.
## (Asserted Against Wright Jr. And Clarigent Only).

266. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-265 above.

267. Nostheide provided valuable services to Clarigent as the Director of Quality Assurance from May of 2022 through January of 2024.

268. Clarigent accepted and benefited from these services.

269. Clarigent was aware that these services were performed with the expectation of payment.

270. Despite the value of the services provided by Nostheide, Clarigent has failed to fully compensate him for his work.

271. As a result of Clarigent's failure to pay, Nostheide has suffered damages in an amount to be proven at trial.

272. Equity and justice require that Nostheide be compensated for the services he provided to Clarigent.

## COUNT XXII: UNLAWFUL RETALIATION IN VIOLATION OF 29 U.S.C. § 215(A)(3). (Asserted Against All Defendants).

273. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-272, above.

274. Pursuant to 29 U.S.C. § 215(a)(3), it is unlawful for any person to retaliate against an employee who seeks to enforce that or other employee's rights under the FLSA.

275. Defendants unlawfully terminated Nostheide after he made protected complaints about Defendants failure to pay him wages for the hours he worked.

276. Defendants violated 29 U.S.C. § 215(a)(3) of the FLSA and showed reckless disregard of the provisions of the FLSA concerning retaliation by taking adverse actions against Nostheide because he engaged in protected activity.

277. As a result of Defendants deliberate, unlawful, and willful acts as set forth above, Nostheide has suffered loss of earnings, earnings potential, other significant economic benefits, and emotional distress.

## COUNT XXIII: UNLAWFUL RETALIATION IN VIOLATION OF OHIO R.C.§ 4111.13 AND THE OHIO CONSTITUTION. (Asserted Against All Defendants).

278. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-277, above.

279. Pursuant to R.C. 4111.13(B) as interpreted in light of R.C. 4111.02, Article II, Section 34a of the Ohio Constitution, and 29 U.S.C. §203(d), it is unlawful for any person to retaliate against an employee who seeks to enforce that employee's rights under the OMFWSA.

280. Article II, Section 34a of the Ohio Constitution provides that:

No employer shall discharge or in any other manner discriminate or retaliate against an employee for exercising any right under this section or any law or regulation implementing its provisions […] An action for equitable and monetary relief may be brought against an employer by […] an employee […] in any court of competent jurisdiction, […] for any violation of this section or any law or regulation implementing its provisions […] Where an employer is found by the state or a court to have violated any provision of this section, the employer shall within thirty days of the finding pay the employee back wages, damages, and the employee's costs and reasonable attorney's fees. Damages shall be calculated as an additional two times the amount of the back wages and in the case of a violation of an anti-retaliation provision an amount set by the state or court sufficient to compensate the employee and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued.

281. R.C. 4111.14(J) states that:

In accordance with Section 34a of Article II, Ohio Constitution, damages shall be calculated as an additional two times the amount of the back wages and in the case of a violation of an anti-retaliation provision an amount set by the state or court sufficient to compensate the employee and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued. The "not less than one hundred fifty dollar" penalty specified in division (J) of this section shall be imposed only for violations of the anti-retaliation provision in Section 34a of Article II, Ohio Constitution.

282. Defendants unlawfully terminated Nostheide after he made protected complaints about Defendants failure to pay him wages for the hours he worked.

283. Defendants violated R.C. 4111.13(B) and the Ohio Constitution and showed reckless disregard of their respective provisions concerning retaliation by taking adverse actions against Nostheide because he engaged in protected activity.

284. As a result of Defendants' deliberate, unlawful, and willful acts as set forth above, Nostheide has suffered a loss of earnings, earnings potential, other significant economic benefits, emotional distress, and is entitled to liquidated damages, including no less than $150.00 per day until this violation is corrected, attorney fees, and costs.

**COUNT XXIV: POST EMPLOYMENT RETALITION IN VIOLATION OF 29 U.S.C. §
215(A)(3).
(Asserted Against All Defendants).**

285. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-284, above.

286. Pursuant to Section 215(a)(3) of the FLSA, it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."

287. Courts have recognized post-employment retaliation claims. See *Robinson v. Shell Oil Co*., 519 U.S. 337, 346, 117 S. Ct. 843, 136 L.E. 2d 808 (1997) (holding that the term "employees" in Title VII's antiretaliation provision includes former employees); *Burlington N. & Santa Fe Ry*. Co. v. White, 548 U.S. 53, 61, 126 S. Ct. 2405, 165 L.Ed. 2d 345 (2006) (rejecting the notion that, to be actionable, there must be "a link between the challenged retaliatory action and the terms, conditions, or status of employment[ ]"; *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) ("The similar statutory language suggests that the Supreme Court's interpretation of "employee" in Robinson—to include former as well as current employees—and definition of retaliatory acts in Burlington Northern similarly apply in the FLSA context.") (cited by A*rias v. Raimondo*, 860 F.3d 1185, 1190 (9th Cir. 2017)).

288. Actionable retaliation need not be confined to "activity that affects the terms and conditions of employment[.]" 548 U.S. at 57. Instead, Ponce need only show that "reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting" a protected complaint under the FLSA. *Id.* at 68

289. Subsequent to terminating Nostheide, Defendants further retaliated against him for making protected complaints about unpaid wages by depriving him of his shares in the company.

290. As a result of Defendants unlawful retaliatory conduct, Nostheide has suffered damages in an amount to be proven at trial.

## COUNT XXV: POST EMPLOYMENT RETALITION IN VIOLATION OF OHIO R.C. § 4111.13(B).
### (Asserted Against All Defendants).

291. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-290, above.

292. Pursuant to Ohio R.C. § 4111.13(B), it is unlawful for any employer to "discharge or in any other manner discriminate against any employee because the employee has made any complaint to the employee's employer, or to the director, that the employee has not been paid wages in accordance with sections 4111.01 to 4111.17 of the Revised Code, or because the employee has made any complaint or is about to cause to be instituted any proceeding under or related to those sections."

293. Like the FLSA, claims for post-employment retaliation are recognized under Ohio law. See *Loew v. Regret, Inc.,* 590 F. Supp. 3d 1068, 1079–80 (S.D. Ohio 2022).

294. Subsequent to terminating Nostheide, Defendants further retaliated against him for making protected complaints about unpaid wages by depriving him of his shares in the company.

295. As a result of Defendants unlawful retaliatory conduct, Nostheide has suffered damages in an amount to be proven at trial.

## COUNT XXVI: ALTER EGO.
### (Asserted Against Wright Jr. And Clarigent Only).

296. Nostheide re-alleges and incorporates by reference the allegations set forth in paragraphs 1-296, above.

297. Clarigent is the alter ego of Wright Jr.

298. Wright Jr. exercises complete dominion and control over Clarigent, such that said entity has no separate mind, will or existence.

299. Upon information and belief, Clarigent does not observe corporate formalities.

300. By seeking loans directly on behalf of Clarigent, Wright Jr. held himself out as personally liable for Clarigent's obligations.

301. Wright Jr. used Clarigent to perpetuate the above-described fraud against Nostheide.

302. Upon information and belief, Wright Jr. has diverted funds from Clarigent for his personal use.

303. Upon information and belief, Clarigent was undercapitalized at the time Wright Jr. incurred debts on its behalf.

304. Clarigent is a mere facade for the operations of the dominant shareholder, Wright Jr.

305. Wright Jr. is personally liable for the obligations of Clarigent.

## **PRAYER FOR RELIEF.**

WHEREFORE, Plaintiff William Nostheide requests judgment in his favor against Defendants and an order containing the following relief:

(a) Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 et seq;

(b) Against Wright Jr. and Clarigent, an award of unpaid minimum wages, unpaid overtime wages, and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

(c) An award of economic damages against all Defendants in an amount to be determined at trial to compensate Nostheide for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, statutory damages, lost wages, compensation, and other benefits of employment;

(d) An award of economic damages against all Wright Jr. and Clarigent in an amount to be determined at trial to compensate Nostheide for all monetary and/or economic damages caused by their theft and conversion of his monies and intentional failure to repay Nostheide;

(e) Against all Defendants, an award of non-economic damages for emotional distress, worry, anxiety and fearfulness caused by their retaliatory termination of Nostheide;

(f) Against Wright Jr. and Clarigent, an award of punitive damages;

(g) Against Clarigent only, an award of statutory damages of $200.00 or six percent interest on Nostheide's unpaid wages, whichever is greater;

(h) Awarding pre-judgment and post-judgment interest as provided by law;

(i) Awarding reasonable attorneys' fees and costs; and

(j) Awarding such other and further relief that this Court deems appropriate.

Respectfully submitted,

*/s/Chris P. Wido*
Chris Wido (0090441)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
3 Summit Park Drive, Suite 200
Independence, Ohio 44131
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email:  Chris.Wido@Spitzlawfirm.com

*Attorney for Plaintiff William Nostheide*


## <u>JURY DEMAND</u>

Plaintiff William Nostheide demands a trial by jury by the maximum number of jurors permitted.


*/s/Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S LAW FIRM**