EXHIBIT A

February 17, 2019



William Nostheide
1370 Arapaho Drive
Morrow, Ohio 45152

Re: Offer of Employment

Dear Bill,

On behalf of Clarigent Health, an Ohio limited liability company (the "Company"), I am pleased to offer you the position of **Director, Quality Assurance**, subject to your agreement with the terms of this letter. Please review this letter carefully. If you accept all of the terms of this letter, please sign below and return.

**1.** *Location/Reporting.* As Director, Quality Assurance you will initially report to the CEO of the Company and perform your job duties principally in the Mason, Ohio office. You shall devote substantially all of your business time and best efforts to the performance of your duties hereunder and use your best efforts to promote the interests of the Company. If you accept this offer, your first day of employment will be on or before **March 1, 2019**.

**2.** *Compensation.* Your initial compensation package is described in *Exhibit A* attached hereto.

**3.** *Intellectual Property, Confidentiality and Restrictive Covenants.* In consideration of the foregoing, and for other good and valuable consideration, you hereby agree with and acknowledge, and hereby affirm, ratify and confirm, the Inventions Assignment, Confidentiality, and Restrictive Covenant Provisions set forth in *Exhibit B*.

**4.** *Business Expenses.* You will be entitled to reimbursement for all reasonable and necessary out-of-pocket business expenses incurred by you in the performance of your duties hereunder in accordance with the Company's normal policies from time to time in effect; provided, however, all expenses in excess of $500 for which you desire reimbursement shall be pre-approved by the CEO of the Company in writing.

**5.** *Other Requirements.* This offer is conditional upon verification of work authorization in the U.S. and satisfactory completion of a background check. The background check may encompass some or all of the following: Reference Check; Criminal Conviction History; Education Verification; Employment Verification.

*\* \* \* \* \* \**

If you accept this offer of employment, your engagement with the Company will be *"at-will,"* will be voluntarily entered into and will be for no specified period. Either you or the Company may terminate your engagement at any time, with or without cause and with or without notice. As such, the Company may modify job titles, duties, salaries and benefits from time to time as it deems necessary. In the event your engagement with the Company is terminated, you will not be entitled to severance pay, pay in lieu of notice or any other such compensation. This letter may be executed in counterparts, and by facsimile or PDF, each of which shall be deemed an original, but all of which together shall constitute

one and the same instrument.

Welcome to the Clarigent Family!

**THE COMPANY:**

Clarigent Health

By: _____

Name: Donald Wright

Its: President and CEO

**AGREED TO AND ACCEPTED BY:**

Print name: **William Nostheide**

Signature: _____

## EXHIBIT A

## COMPENSATION

- **Salary**: Base compensation of **$105,000** on an annualized basis, payable in accordance with the Company's standard payroll practices.

- **Equity**: Upon approval by the Board of Managers, the Company will grant you options to purchase **75,000** Common Units of the Company, subject to vesting and other terms outlined in the Option Agreement executed by and between you and the Company on or around the date hereof.

- **Benefits**: You shall be entitled to participate in such group employee benefits as may be established and maintained by the Company for the benefit of its employees similarly situated to you; provided, however, that the Company may modify, limit, cancel, or replace any policies, benefits, and/or plans and the terms thereof without any obligation to you.

**EXHIBIT B**

**INVENTIONS ASSIGNMENT, CONFIDENTIALITY, AND RESTRICTIVE COVENANT PROVISIONS**

You (the **"Participant"**) hereby agrees as follows:

(a) <u>Confidentiality</u>. The Participant will have access to and will participate in the development of and/or be acquainted with confidential or proprietary information of the Company (***"Confidential Information"***). The term "Confidential Information" does not include any information that is or becomes generally publicly available (other than as a result of violation of this Agreement by the Participant). The Participant will not disclose, use or make known for the Participant's or another's benefit (other than for the benefit of the Company) any Confidential Information or use any such Confidential Information in any way.

(b) <u>Inventions Assignment</u>. All technology, ideas, concepts, inventions, improvements, discoveries, programs, designs, devices, plans, processes, techniques and other works of authorship and development, whether or not patentable (including but not limited to all copyright, trademark, patent, trade secret, know-how and intellectual property rights associated therewith) developed, devised, made, learned of, conceived or reduced to practice by the Participant, either solely or in collaboration with others, whether before or after the Effective Date, and whether during or outside work hours, relating to the business of the Company or resulting from the Participant's exposure to or receipt of Confidential Information (the "**Work Product**"), are the exclusive property of the Company, which the Participant hereby assigns to the Company. The Company automatically owns all right, title and interest in and to the Work Product, whether patented or not. In the event that the Participant makes or conceives any Work Product at any time, the Participant will promptly disclose such Work Product to the Company and not disclose the Work Product to any third party, except as may be required by law. All Work Product is "works made for hire," and the Company is the "person for whom the work was prepared." As between the parties, to the greatest extent permitted under applicable law, the Company is the author and/or owner, as appropriate, of the Work Product for purposes of patent, copyright or trademark law and is entitled to secure patent, copyright and trademark protection in the Company's name, if and as applicable, and the Participant agrees to cooperate with the Company as reasonably necessary for the Company to secure such patent, copyright and trademark protection, including signing all papers and/or assignments to reflect the Company's ownership rights. To the extent that the Work Product and any intellectual property rights therein or related thereto are not deemed or properly treated as "works made for hire," the Participant hereby expressly and irrevocably assigns to the Company all of the Participant's right, title and interest in and to the Work Product and any and all intellectual property rights therein or related thereto. The Participant represents and warrants to the Company that the Participant has full authority to enter into this Agreement and that in performing under this Agreement, the Participant will not violate the terms of any agreement with any third party. The Participant has disclosed, and will continue to disclose to the Company, all tools, technology or other intellectual property owned or held by a third party which is used by the Participant in connection with the Participant's involvement with the Company. The Participant shall execute and deliver such further instruments and other documents as the Company may reasonably request to effectuate the purposes of, or to evidence the transactions contemplated by, these provisions.

(c) <u>Restrictive Covenants</u>.

(i) <u>Nonsolicitation [Customers]</u>. During the period of the Participant's employment with, service to or engagement by the Company and for the one-year period immediately following the termination thereof regardless of whether such termination was voluntary or involuntary, with or

without cause, or due to disability or death (any of the foregoing, a **"Termination"**), the Participant shall not solicit, directly or indirectly, for or on behalf of any person, corporation, firm, partnership or any other entity whatsoever which competes with the Company anywhere in North America, (i) any customers of the Company who or which were customers of the Company at any time during the Participant's engagement by or relationship with the Company, or (ii) any potential customers of the Company with whom the Participant had contact on behalf of the Company during the Participant's employment with, service to or engagement by the Company.

(ii) Nonsolicitation [Employees]. During the period of the Participant's engagement by or relationship with the Company and for the one-year period immediately following a Termination, the Participant shall not solicit or hire, directly or indirectly, on the Participant's behalf or on behalf of any other person or entity, any person employed with, providing service to or engaged by the Company except with the specific written consent of the Company.

(iii) Noncompetition. During the period of the Participant's engagement by or relationship with the Company and for the one-year period immediately following a Termination thereof for any reason, the Participant will not directly or indirectly (whether as an officer, director, equityholder, partner, proprietor, associate, representative, consultant or in any capacity whatsoever) engage in, become financially interested in, be employed with, provide service to or be engaged by or have any business connection with any person, corporation, firm, partnership or any other entity whatsoever which competes with the Company anywhere in North America.

(iv) Acknowledgement. The Participant represents that the Participant's experience, capabilities and circumstances are such that the foregoing restrictive covenants will not prevent the Participant from earning a livelihood. The Participant further agrees that the foregoing restrictive covenants (including, without limitation, the time and territorial limitations) are reasonable and properly required for the adequate protection of the current and future businesses of the Company. The Participant further acknowledges that a remedy at law for any breach or threatened breach of any of the foregoing restrictive covenants would be inadequate and will cause immediate and irreparable harm to the Company in a manner that cannot be measured nor adequately compensated in damages. The Participant further acknowledges that in the event of any such breach or threatened breach, and in addition to any and all other remedies that it may have at law or in equity, the Company shall be entitled to temporary, preliminary and permanent injunctive relief to restrain such breach or threatened breach by the Participant, and to recover all costs and expenses, including reasonable attorneys' fees, of any proceedings brought to obtain such injunctive relief. Nothing contained herein shall restrict or limit in any manner the Company's right to seek and obtain any form of relief, legal or equitable, against the Participant in an action brought to enforce its rights under any of the foregoing restrictive covenants.